CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 30 2012

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| PLASTIC FABRICATING, INC., | ) |
|     Plaintiff, | ) Civil Action No. 7:12-CV-00119 |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| ELECTREX COMPANY, INC., | ) |
| | ) By: Hon. James C. Turk |
|     Defendant. | ) Senior United States District Judge |

This matter is before the Court on Defendant's Motion to Dismiss for Improper Venue or in the Alternative, to Transfer Venue. (Dkt. No. 7). Plaintiff filed a memorandum in opposition and Defendant replied. The Court heard oral argument on May 10, 2012, and accordingly, the matter is now ripe for disposition. In accordance with the following Memorandum Opinion, the Defendant's Motion is **DENIED**.

I. **Background**

This action concerns alleged breaches of three sales contracts. Plaintiff Plastic Fabricating, Inc. ("PFI") is a Virginia corporation with its primary place of business in Roanoke, Virginia. PFI manufactures and sells stainless steel tanks, carbon steel tanks, and polypropane tanks. Defendant Electrex Company, Inc. ("Electrex") is a Michigan corporation with its principal place of business in Harrison Township, Michigan. PFI originally filed this action in the Circuit Court for the City of Roanoke, but Electrex removed it to the Western District of Virginia on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Electrex now moves this Court to either dismiss the complaint or transfer the action to the Eastern District of Michigan, pursuant to 28 U.S.C. §§ 1391(b)(1)-(2). The facts alleged by PFI are as follows:

Since 2006, Electrex and PFI have engaged in approximately 50 separate transactions for the purchase of various tanks for a total product value of approximately $980,000. The majority of the products sold to Electrex by PFI were made to order at PFI's facility in Roanoke. PFI alleges that Electrex has refused to pay for three recent orders of tanks. In total, PFI claims damages in the amount of $103,577.61 exclusive of interest and costs.

The first disputed order was for 12 stainless steel tanks. In February 2011, Electrex sent an e-mail to PFI requesting 12 stainless steel tanks and providing the necessary specifications for their fabrication. PFI responded, providing Electrex with a proposal that included detailed drawings and a price per tank. Electrex then submitted a purchase order to PFI, which stated the tanks were to be shipped to Michigan. The tanks were fabricated in Roanoke and then shipped to Michigan. Once in Michigan, Electrex notified PFI that its customer would not accept the tanks. The tanks are believed to be in Michigan.

The second disputed order was for three round tanks. Per Electrex's request, PFI submitted a proposal for the three round tanks. Electrex then submitted a purchase order, which requested the tanks be shipped to Ohio. The tanks were fabricated in Roanoke and then shipped to Ohio. However, Electrex rejected the tanks and they were returned to Virginia, which is where they are presently.

The third disputed order was for 24 tanks of various materials for Brasscraft, a customer of Electrex. Again at Electrex's request PFI submitted proposals for the 24 tanks and Electrex then submitted a purchase order. The purchase order requested the tanks be shipped to Texas. Twenty-three of the 24 tanks were fabricated in Roanoke, while one tank was fabricated in Arkansas by a subcontractor. The tanks were accepted by Electrex and are being used by Brasscraft, but Electrex has not paid the invoice in full.

## II. Analysis

### A. Virginia Has Personal Jurisdiction

Electrex argues that this Court does not have personal jurisdiction over it under Virginia's long-arm statute because Electrex has not "[t]ransact[ed] any business in th[e] Commonwealth." Va. Code § 8.01-328.1(A)(1). A court may exercise personal jurisdiction over a corporation not created under the laws of Virginia if such jurisdiction is authorized by the Virginia long-arm statute, Va. Code §§ 8.01-299 et seq., and the exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs, Inc., 334 F.3d 390, 396 (4th Cir. 2003). Virginia's long-arm statute extends personal jurisdiction to the extent permitted under the Due Process Clause and thus, "the statutory inquiry merges with the constitutional inquiry." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009).

The constitutional inquiry looks to see whether the defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation and citation omitted). The "minimum contacts" analysis "is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 293 (4th Cir. 2009) (citing Int'l Shoe, 326 U.S. at 319). Thus, to be subject to a court's exercise of personal jurisdiction, a defendant must have "'fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)).

3

The Fourth Circuit has synthesized the due process requirement into a three part test, under which the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Consulting Eng'rs, 561 F.3d at 278 (quoting ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted)).

Under the first prong of the test, courts may consider a variety of factors, which include, but are not limited to: (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) whether the performance of contractual duties was to occur within the forum." Consulting Eng'rs, 561 F.3d at 278 (internal citations omitted). The second prong of the test "requires that the defendant's contacts with the forum state form the basis of the suit." Id. at 278-79. The third prong of the test permits consideration of additional factors "to ensure the appropriateness of the forum.... [These] factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes;

4

and (5) the interests of the states in furthering substantive social policies." Id. at 279 (citing World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

The present case falls very close to the line as to whether Electrex has sufficient minimum contacts with Virginia so as to have subjected itself to suit here. This Court finds that Electrex is subject to personal jurisdiction in Virginia. It is undisputed that Electrex does not maintain any officers or agents in Virginia, nor does it own any property in Virginia, and nor did Electrex make any in-person contact in Virginia. However, it does appear that Electrex initiated the sales contracts by sending e-mails to PFI requesting PFI manufacture the various tanks. Second, Electrex and PFI have been doing business since 2006 and have done almost $1 million in business in that time. Third, Electrex has engaged in significant communication with PFT. Contrary to Electrex's suggestion at oral argument, the facts of this case are not the same as an individual ordering something via mail or internet from a retailer in another state. Those circumstances would consist of a single brief communication. Here, Electrex requested custom products be manufactured and provided specifications for those products. In response PFI drew up a proposal that included schematic drawings and individualized prices. Only after receiving the custom proposal did Electrex submit a purchase order. Fourth, the majority of the tanks were manufactured in Virginia and PFI has asserted that Electrex knew the tanks were to be manufactured in Virginia. Of the seven factors considered, three tilt toward finding jurisdiction inappropriate, but four weigh in favor of finding the jurisdictional nexus satisfied.[1] Furthermore, the Fourth Circuit has said that courts "are entitled to accord special weight to the fact that it was [the Defendant] that initiated contact with the [Plaintiff] in Virginia." CFA Inst., 551 F.3d at 295, n.17 (citing Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229

---

[1] The Court does not consider whether the parties agreed as to the law to govern the contract because there does not appear to have been a formal contract of sale and none of the communications set forth what law would govern.

5

F.3d 448, 451 (4th Cir. 2000) (concluding contacts insufficient under minimum contacts analysis in part because plaintiff initiated contractual relationship)). Thus, the balance tilts in favor of finding that Electrex "purposefully availed itself of the privilege of conducting activities" in the state of Virginia. Consulting Eng'rs, 561 F.3d at 278 (quotations and citations omitted).

With regard to the second part of the test—whether the plaintiff's claims arose out of the activities directed at the state—the facts show that 28 of the 29 tanks were manufactured in Virginia and it is the fabrication and resultant quality of the tanks that is at issue in the present case. Thus, it is clear PFI's claims arise out of activities in Virginia.

Finally, with regard to whether personal jurisdiction would be constitutionally reasonable, this Court finds that it is. As noted above, the third part of the Fourth Circuit's test is designed "to ensure the appropriateness of the forum." Id. at 279 (citing Burger King, 471 U.S. at 477). In cases "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477. Here, Electrex has not come forward with any consideration, other than the inconvenience of litigating in Virginia, to render jurisdiction unreasonable. Mere inconvenience, however, is not sufficient to render a forum unreasonable under the due process analysis. See id. at 477-78. Nonetheless "substantial inconvenience" may provide grounds for a change of venue and that is the question the Court considers next. Id.

### B. Venue is Proper in Virginia and Transfer of Venue is Not Warranted

Electrex next argues that even if this Court has personal jurisdiction it should transfer the case to the Eastern District of Michigan because either (1) venue is improper in Virginia under 28 U.S.C. § 1391 or (2) even if venue is proper the case should be transferred, pursuant to 28

6

U.S.C. §1404(a), "for the convenience of the parties and witnesses and in the interests of justice." (Dkt. No. 8, at 6).

28 U.S.C. § 1391(b) provides, in relevant part, that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated....

Electrex argues that venue is proper in Michigan because a substantial part of the events occurred in Michigan. Specifically, Electrex asserts the contract was entered into in Michigan and that the alleged breach occurred in Michigan. Furthermore, Electrex notes that 12 of the 29 tanks are currently located in Michigan. (Dkt. No. 8, at 5).

However, these arguments are unpersuasive because the Fourth Circuit has held that venue, under § 1391, may be proper in more than one location. Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004) ("Under the amended statute, it is possible for venue to be proper in more than one judicial district."). That is the case here. While a significant portion of the events may have happened in Michigan, a significant portion of the events certainly occurred in Virginia. All but one of the tanks was manufactured in Virginia and thus all but one was located in Virginia at some time in the past. Additionally, payment was due at the facility in Virginia. Thus, under § 1391 venue is proper in the Western District of Virginia and it may also be proper in the Eastern District of Michigan.

Electrex argues, in the alternative, that even if venue is proper in Virginia, this Court should transfer venue for the convenience of the parties. See 28 U.S.C. 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or

7

division to which all parties have consented.").[2] A plaintiff's choice of forum is, however, entitled to deference, especially when the suit is filed "in the district and division in which [the plaintiff] resides," as is the case here. Glamorgan Coal Corp. v. Ratners Grp, PLC, 854 F.Supp. 436, 437 (W.D. Va. 1993) (citing Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)). Indeed, to defeat the plaintiff's choice a defendant must show that "the balance of equities is in [his or her] favor [and] that judicial economy and convenience to **all parties** favor suit in another forum." Id. at 437-48 (quoting Eldridge v. Bouchard, 620 F. Supp. 678, 684 (W.D. Va. 1985) (emphasis added)). See also Akers v. N & W Ry. Co., 378 F.2d 78, 80 (4th Cir. 1967) (noting the plaintiff has "the primary right ... to choose his forum," and that selection is "not easily to be overthrown").

Although Electrex has come forward with significant evidence and argument that it would be inconvenienced if the suit were to remain in the Western District of Virginia, evidence of inconvenience alone is insufficient to warrant a transfer of venue. Electrex also argues that access to the sources of proof and witnesses is easiest in the Eastern District of Michigan. However, the Court is not convinced by this argument. While it is true that Electrex's employees are in Michigan, the individuals who fabricated the tanks and those that tested the tanks for compliance with industry standards, the issue in this case, are located in Virginia. Furthermore, the majority of the tanks at issue are no longer located in Michigan: twelve tanks are likely located in Michigan, three tanks are in Virginia, and the remaining 24 tanks are in Texas. The simple truth in this case is that one party will be inconvenienced regardless of where the proceeding takes place. If the proceeding remains in the Western District of Virginia, Electrex is inconvenienced. If the proceeding is transferred to the Eastern District of Michigan, PFI is

---

[2] The decision to transfer lies within the sound discretion of the court. See Beam Laser Sys. v. Cox Comm'ns, Inc., 117 F. Supp.2d 515, 517 (E.D. Va. 2000).

8

inconvenienced. Faced with such circumstances, the Court must respect PFI's choice of forum and decline to transfer the case to the Eastern District of Michigan.

### III. Conclusion

This Court concludes that Electrex's business relationship with PFI demonstrates that Electrex purposefully directed its activities at Virginia such that Virginia's long-arm statute is satisfied and the dictates of constitutional due process are not offended. Furthermore, venue is proper in the Western District of Virginia and the facts of this case do not warrant a transfer of venue to the Eastern District of Michigan. Accordingly, Defendant's Motion to Dismiss for Improper Venue or in the Alternative, to Transfer Venue is **DENIED**. An appropriate order shall issue this day.

ENTER: This 20th day of May, 2012

/s/ James C. Turk
Senior United States District Judge